**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

STEVEN MICHAEL CURRENT,

Petitioner,

v.

ROB MUNDT, Warden,

Respondent.

Civil No. 02-112 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

---

Andrea George, Assistant Federal Defender, OFFICE OF THE FEDERAL DEFENDER, 107 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for petitioner.

Margaret Burns Magill, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for respondent.

This matter is before the court on the petition of Steven Current ("Current") for a writ of habeas corpus under 28 U.S.C. § 2241. For the reasons set forth below, the Court grants Current's petition.

## BACKGROUND

Current is an inmate at the Federal Correctional Institution in Waseca, Minnesota ("FCI Waseca"), and is serving a thirty-six month sentence for Misprison of a Felony

FILED FEB 15 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. FEB 15 2002
DEPUTY CLERK

under 18 U.S.C. § 4. Respondent Rob Mundt is the Warden of FCI Waseca.[1] According to the Bureau of Prisons ("BOP"), Current's scheduled release date, including credited time, is May 23, 2002.

On March 23, 1999,[2] Current was arrested by Minneapolis police for weapons and other violations.[3] This incident is also the basis for the federal charge for which Current is now imprisoned. Current was released on his own recognizance on March 27, but was again arrested on March 31, this time for violating his probation from a 1998 sentence. He was held in the Hennepin County Jail until April 28, 1999, when he was transferred to the Hennepin County Workhouse as a "pretrial inmate."[4] MacMonegle Dec. Attach D.

---

[1] Respondent will be referred to in this opinion as "the government."

[2] There are discrepancies between the dates listed in Current's brief to this Court and those relied upon by the government. The government's timeline is taken from the sworn Declaration of Jeannie MacMonegle, and is based upon a summary of Current's incarceration prepared by A. Daddario, Legal Instruments Examiner at FCI Waseca. Current provides no evidence or affidavits to support his timeline. The Court therefore finds that the government's dates are the only ones supported by the record. Accordingly, this opinion will rely on the timeline described in the MacMonegle Declaration and its attachments.

[3] Current has a rather extensive history of arrests and incarceration during the time period relevant to this case. The Court will confine itself, however, to discussion of those arrests and detentions that pertain to Current's petition.

[4] The government has also characterized Current's status in the Workhouse as "official recognizance." From the facts presented in the record, the Court understands this to mean that Current was confined at the Workhouse. This conclusion is bolstered by Daddario's description of Current as a "pre-trial inmate," and Daddario's statement that Current "remained at the Hennepin County Workhouse until 8-9-99." MacMonegle Dec. Attach. D.

The MacMonegle declaration purports to rely on Daddario's memo for its explanation of Current's incarceration history. *See* MacMonegle Dec. ¶¶ 4-5. MacMonegle, however, characterizes Current's status as of April 28, 1999 as being released "on his own recognizance." MacMonegle Dec. ¶ 5. The Court can only conclude, based on the rest of Ms. MacMonegle's declaration and the record as a whole, that her characterization is erroneous.

(Footnote continued on next page.)

Current was returned to the Hennepin County Jail on August 9, and remained there until his release "to the street" on August 16, 1999. *Id.*

On November 24, 1999, Current was once again incarcerated in the Hennepin County Jail pending revocation of his 1998 probation. Current remained in the custody of Hennepin County until March 9, 2000, when he was given over to federal authorities to face the charge for which he is currently serving time.

On October 6, 2000, Current plead guilty in the United States District Court for the District of Minnesota to Misprison of a Felony, a charge that apparently stemmed from Current's March 3, 1999 arrest. The court sentenced Current to 36 months imprisonment, followed by a one-year term of supervised release. The sentencing judge specified that Current should receive credit for all time spent in state custody that was related to the federal charges. Current began serving his present federal sentence on October 30, 2000.

The BOP now calculates Current's release date as May 23, 2002. Current claims that under 18 U.S.C. § 3585(b), he should receive credit for time spent in the Workhouse

---

(Footnote continued.)

In any event, however one chooses to characterize Current's status between April 28 and August 9, the record clearly states that Current "remained at the Workhouse" until August 9, 1999. There is no evidence that Current was permitted to leave the Workhouse during this period.

between April 28, 1999 and August 9, 1999, which would move his release date to February 10, 2002.[5]

## ANALYSIS

Title 18 U.S.C. § 3585(b) provides in relevant part that "a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in **official detention** prior to the date the sentence commences. . . ." (emphasis added). In deciding whether to grant Current's petition, this Court must determine whether his time in the Workhouse constituted "official detention."

The United States Supreme Court has addressed this issue as it applies to prisoners whose prior time was served in federal custody. *See Reno v. Koray*, 515 U.S. 50 (1995). In that case, the Court determined that a defendant suffers "official detention" under § 3585(b) only when committed by a court order to the custody of the Attorney General. *Id.* at 56. The Court noted what it considered a crucial distinction between court-ordered "detention," in which an inmate is explicitly committed to the custody of the Attorney General under 18 U.S.C. § 3142, and court-ordered "release," in which an inmate is granted bail on restrictive conditions. *Id.* at 57. The court noted that even if the latter inmate suffered a wide array of restrictive conditions, he has still been "released," and thus cannot receive credit for this time. *Id.*

---

[5] In his petition, Current alleges other miscalculations and failures to credit him with time. From the Court's review of the record, these issues appear to have been resolved, and have resulted in the BOP's recalculating Current's release date as May 23, 2002. Therefore, this

(Footnote continued on next page.)

*Koray*'s analysis of what does **not** constitute "official detention" provides useful guidance for the present case. The Court affirmed the reasoning of cases which held that time spent in halfway houses, home confinement, or on bail is not creditable under § 3585(b). *Id.* at 54 n.1. Prior to *Koray*, the Eighth Circuit reached a similar conclusion in *Moreland v. United States*, 968 F.2d 655 (8th Cir. 1992) (en banc) (holding that time spent in a halfway house or residential community center as a condition of bail or bond is not creditable under § 3585 (b)). In *Moreland*, the court held that time spent in a halfway house does not constitute "official detention" because the "degree of restraint provided by residence in a community center is not sufficient restraint to constitute custody within the meaning of [§ 3585(b)]." *Id.* at 658. The court further held that "time spent in a **jail-type facility** (not including a community based program located in a Metropolitan Correctional Center or jail) as a condition of bail or bond **is creditable** as jail time because of the greater degree of restraint." *Id.* (emphasis added). *See also Starchild v. Federal Bureau of Prisons*, 973 F.2d 610, 611 (8th Cir. 1992) (holding that inmate could not receive credit under § 3585(b) for time spent under pre-conviction house arrest because inmate was not in a jail-type facility); *Knight v. United States*, 1995 WL 573423 at *1 (8th Cir. Sept. 29, 1995) (holding that inmate could not receive credit under § 3585(b) for time spent released on bail because he was not detained "at a penal or correctional facility").

(Footnote continued.)
Order will address only the question of credit for Current's time in the Hennepin County Workhouse between April 28, 1999 and August 9, 1999.

In *Koray*, the Supreme Court shifted its focus away from the type of facility or degree of restraint in which an inmate is held. *See Koray*, 515 U.S. at 62-64. *Koray* held that no matter how restrictive the conditions of incarceration, an inmate can never suffer "official detention" and receive credit under § 3585(b) without a court-issued detention order pursuant to 18 U.S.C. § 3142 (also known as the Bail Reform Act of 1984). *Id.* at 60. The Court limited its holding, however, to federal inmates released on bail pursuant to the federal Bail Reform Act. *Id.* at 63 n.5. The Court went so far as to expressly state that its holding does not apply to inmates who are seeking credit under § 3585(b) for time spent in the custody of **state** authorities. *Id.*

In the present case, Current seeks credit for time that he served in custody of the State of Minnesota, pursuant to state law. *See id.* (noting that the BOP "often grants credit under § 3585(b) for time spent in state custody" prior to being turned over for federal prosecution). Therefore, contrary to the government's suggestions, *Koray* does not govern this case. This Court instead looks to Eighth Circuit precedent, particularly *Moreland*, to determine whether Current was held in "official detention" at the Hennepin County Workhouse. Upon examining the record and the facts, the Court now determines that he was.

The government gives two related grounds for its argument that Current did not suffer "official detention" at the Workhouse. First, it relies on statements by "Hennepin County prison record officials" that the Workhouse "setting would not be considered custodial in nature to provide Current with credit for this time towards [his] state sentences." Govt. Response at 13. Even if the statements of these unnamed officials

could be said to accurately represent county policy, this Court sees no reason why it must defer to Hennepin County's interpretation of a federal statute. The government's implication that BOP simply adopted Hennepin County's definition of "custodial" as its own is also unavailing. The government correctly notes the Supreme Court's deference in *Koray* to the BOP's statutory interpretation;[6] that case, however, refers specifically to BOP's interpretation of § 3585(b) in conjunction with "detention orders" under the federal Bail Reform Act [18 U.S.C. 3142]. *See Koray*, 515 U.S. at 60-64. As discussed earlier, this intersection of § 3142 and § 3585 led the Supreme Court to exclude state-held prisoners – like Current – from its holding. *See Id.* at 63 n.5. Once again, therefore, *Koray* does not apply in these circumstances.

Second, the government argues that the Hennepin County Workhouse is "akin to a half-way house or community treatment center setting," and therefore does not "rise to the level of a 'jail-type' facility sufficient to constitute official detention." Govt. Response at 13. The government provides no evidence for this assertion, beyond the mere fact that Current might have been in the Workhouse pursuant to a bond or "official recognizance." The government also ignores BOP's own assertions that Current was at the Workhouse as a "pre-trial inmate," and that he apparently was unable to leave the Workhouse during his stay there. *See* MacMonegle Dec. Attach. D. Moreover, Current's status in the Workhouse does not preclude him from receiving credit, if he was kept in a jail-type facility under a "great degree of restraint." *Moreland*, 968 F.2d at 658.

[6] *See* Govt. Response at 11-12.

The Court recognizes that the Workhouse provides a variety of correctional programs, ranging from standard incarceration to community treatment.[7] However, the government presents no evidence, beyond its bald assertions, to contradict evidence in the record that plaintiff's stay at the Workhouse was "full physical incarceration" and "imprisonment in a place of confinement." *Id.* at 658 (quoting *United States v. Woods*, 888 F.2d 653 (10th Cir. 1989)). The Workhouse is not a halfway house, nor is it run by an independent community organization. *See id.* at 659-60 (holding that pre-sentence inmate was not in "detention" because he was released to a halfway house and thus was in the custody of halfway house proprietors, not the Attorney General). The Workhouse is a correctional facility run by the county, and while incarcerated there, Current was under the supervision and control of the county. This is reflected in Minnesota law, which, though not binding on this Court, demonstrates that the Workhouse is essentially a jail, one of several options for incarcerating criminals in Minnesota. *See* Minn. Stat. § 609.105 (providing that criminal sentences of imprisonment may be to a workhouse); Minn. Stat. § 631.461 (providing that when a criminal sentence includes imprisonment in a county jail, the offender may be sentenced to "imprisonment in a workhouse"); Minn. Sentencing Guideline III, subd. C (categorizing workhouses along with jails in list of facilities for which state inmates may receive jail credit under Minnesota law).

---

[7] For a brief overview of the Hennepin County Workhouse and its functions, *see* <www.co.hennepin.mn.us/commcorr/acf.htm> (visited February 12, 2002).

In conclusion, the Court determines that the Hennepin County Workhouse was a "jail-type facility" as it applied to Current between April 28, 1999 and August 9, 1999, and therefore constituted "official detention" under 18 U.S.C. § 3585(b). Accordingly, the BOP should have given Current credit for that period of time when calculating his release date. Current's petition for a writ of habeas corpus is therefore granted. The BOP must recalculate his release date, reflecting credit for the time Current served at the workhouse between April 28, 1999 and August 9, 1999.

## ORDER

Based on the foregoing of all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that petitioner Steven Current's petition for a writ of Habeas Corpus [Docket No. 1] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: February 15, 2002
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge